UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZEF HUTAJ,<br><br>                Plaintiff,<br><br>-against-<br><br>77 BLEECKER STREET CORP.,<br>CENTURY MANAGEMENT SERVICES INC,<br>JAVIER RAMIREZ, GEORGE OSORIO,<br>JOSE SANDOVAL, STEPHEN CAMILLERI<br>and JACOB SIROTKIN,<br>individually,<br><br>                Defendants. | No. 23-CV-05770 (LAP)<br><br>OPINION AND ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court are motions filed by 77 Bleecker Street Corp. ("77 Bleecker"), Century Management Services Inc. ("Century") (collectively, "Corporate Defendants"), and Javier Ramirez ("Ramirez"), George Osorio ("Osorio"), Jose Sandoval ("Sandoval"), Stephen Camilleri ("Camilleri"), and Jacob Sirotkin ("Sirotkin") (collectively, "Individual Defendants") (collectively, "Defendants") for dismissal[1] of Plaintiff's Amended Complaint (see Am. Compl., dated Sept. 3, 2024 [dkt. no. 37]) filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has opposed

---

[1] (See Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint ("Def. Memo.", dated Sept. 17, 2024 [dkt. no. 41]; Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Amended Complaint ("Def. Reply", dated Oct. 22, 2024 [dkt. no. 52]).

both motions.[2]   For the reasons set forth below, Defendants'
motions are GRANTED in part and DENIED in part.

## I.  Background

### A. Factual Allegations

For the purposes of these motions, the Court assumes that the
following allegations are true and draws all reasonable inferences
in favor of Plaintiff.  See Koch v. Christie's Int'l PLC, 699 F.3d
141, 145 (2d Cir. 2012).

As alleged in the Amended Complaint, Plaintiff Zef Hutaj
("Plaintiff") is a Caucasian male of Albanian national origin
residing in Westchester County, New York.  (Am. Compl. ¶ 7.)  From
approximately April 11, 2019 until his termination on December 14,
2022, Plaintiff was employed as a porter for Defendant 77 Bleecker
Street Corp. ("77 Bleecker"), a corporation incorporated and
headquartered in New York.  (Id. ¶¶ 10, 30, 113-16.)

At the time of his hiring, Plaintiff was one of five porters
employed by 77 Bleecker.  (Id. ¶ 31.)  While the other four porters
were of Latino or Hispanic race and national origin, Plaintiff
alleges he was the only Albanian porter (and the sole Caucasian
porter) on staff.  (Id. ¶¶ 31-33.)  In December 2020, Defendant
Ramirez was promoted from the position of handyman to temporary
Superintendent and Supervisor.  (Id. ¶¶ 34-35.)  Prior to Defendant

---

[2] (See Plaintiff's Memorandum of Law in Opposition to Defendants' Partial Motion
to Dismiss the Amended Complaint ("Pl. Opp.", dated Oct. 8, 2024 [dkt. no. 47]).

Ramirez's promotion and the subsequent events leading to this action, Plaintiff maintained an "exemplary record" and consistently completed his assigned tasks. (Id. ¶ 39.)

In or about February of 2021, Defendant Ramirez commenced a pattern of mistreatment and verbal abuse toward Plaintiff, frequently directing derogatory remarks regarding his national origin, including statements such as, "I don't like Albanians" and "Fuck you, you fucking Albanian." (Id. ¶¶ 40–41, 60.) Physical hostility accompanied these verbal slurs. In one instance, while Plaintiff was operating a building compactor, Defendant Ramirez purportedly released the compactor's lid, causing it to strike Plaintiff's head. (Id. ¶ 42.) This incident resulted in a large gash and a permanent scar. (Id.) Despite the severity of the injury, Plaintiff refrained from filing a formal complaint at that time due to a fear of further hostility from Defendant Ramirez and upon the specific advice of a fellow porter. (Id. ¶ 43.)

The alleged harassment persisted as Defendant Ramirez continued to direct ethnic insults toward Plaintiff and disproportionately assigned Plaintiff the most "strenuous tasks." (Id. ¶¶ 45–49.) Plaintiff alleges that Defendant Ramirez intentionally engineered these assignments to ensure Plaintiff's failure. (Id. ¶ 49.) For example, Defendant Ramirez allegedly instructed other porters to leave a full week's worth of trash untouched and to write Plaintiff's name on every garbage bag,

placing the entire burden of taking out the building's trash—a task meant to be distributed equally among all porters—solely upon Plaintiff. (Id. ¶¶ 50-52.)

In or about December of 2021, Defendant Camilleri took over for Defendant Ramirez as Superintendent and Supervisor. (Id. ¶ 54.) Because Plaintiff felt more comfortable with the new supervisor, Plaintiff filed a protected complaint against Defendant Ramirez regarding the discriminatory conduct and requested to be reassigned to a different shift to minimize interactions with Defendant Ramirez, which was approved. (Id. ¶¶ 55-56.) However, when Defendant Camilleri was not present, Defendant Ramirez continued his targeted harassment of Plaintiff. (Id. ¶¶ 58-59.) Defendant Ramirez told Plaintiff that it was his "life goal" to have Plaintiff fired and specifically stated: "I will terminate you. I will have you fired. George [Osorio, the board president] is my friend, and I will make it happen." (Id. ¶¶ 58-60.)

Plaintiff continued to lodge additional in-person complaints with Defendant Camilleri between December 2021 and August 2022. (Id. ¶ 61.) Defendant Camilleri assured Plaintiff that the concerns would be "reported up the chain of command." (Id. ¶ 62.) The chain of command at 77 Bleecker included Board President Defendant Osorio ("Osorio") and property manager Defendant Sirotkin ("Sirotkin"). (Id. ¶¶ 21, 62.) Following these

reports, the Individual Defendants allegedly failed to provide Plaintiff with an employee handbook or comparable resource that might have guided Plaintiff in understanding his rights. (Id. ¶ 109.)

On or about September 2, 2022, Defendant Sandoval ("Sandoval"), a fellow porter, contacted Defendant Osorio and informed Defendant Osorio that Plaintiff was under the influence of alcohol while on duty. (Id. ¶ 66.) Plaintiff, who maintains that he does not drink alcohol, denied the allegation when confronted by Defendant Osorio and explained that Defendants Ramirez and Sandoval were conspiring to secure Plaintiff's termination. (Id. ¶¶ 67, 96.) Without conducting an independent investigation or observing any evidence of impairment, Defendant Osorio dismissed Plaintiff's explanation, stating: "You have been drinking Zef and whatever Ramirez is saying is the truth." (Id. ¶¶ 68-70.) Despite knowing that Plaintiff had previously filed multiple discrimination complaints against Defendant Ramirez, Defendant Osorio called the police. (Id. ¶¶ 71-72.) Upon observing and speaking with Plaintiff, the responding officers found no basis for an arrest. (Id. ¶ 74.) Instead, they called an ambulance to transport Plaintiff to the hospital for a medical evaluation. (Id.)

Medical staff subsequently conducted tests confirming that Plaintiff was not, in fact, intoxicated. (Id. ¶ 77.) When

Plaintiff returned to work and presented a doctor's note verifying his sobriety, Defendant Osorio disregarded the documentation, reaffirmed his belief in Defendant Ramirez's account over Plaintiff's, and called the police a second time.  (Id. ¶ 78.) The officers reviewed the medical note, acknowledged there were "no issues," and departed.  (Id.)  Nevertheless, Defendant Osorio refused to allow Plaintiff to resume work and reported the alleged intoxication to Defendant Sirotkin.  (Id. ¶¶ 79, 83.)

On or about September 6, 2022, Defendant Sirotkin informed Plaintiff of his indefinite suspension.  (Id. ¶ 84.)  Defendant Sirotkin ignored Plaintiff's repeated explanations regarding Plaintiff's sobriety, the corroborating medical evidence, and Defendant Ramirez's ongoing discrimination.  (Id. ¶¶ 84-86.) Subsequently, Defendants Sirotkin and Camilleri issued Plaintiff an Employee Discipline Notice.  (Id. ¶ 87.)  The Notice cited Defendant Ramirez as the observing witness to the alleged intoxication, even though Defendant Ramirez was not scheduled to work on the date of the incident.  (Id. ¶¶ 87-88.)

On or about September 15, 2022, Plaintiff and his Union entered into a stipulation of settlement with 77 Bleecker imposing a ten-day suspension and designating it as a "Final Warning," such that any further misconduct could result in immediate termination. (Id. ¶ 95.)  Despite speaking limited English, Plaintiff was allegedly pressured by the Defendants to sign the document without

an Albanian translation or legal advice. (Id. ¶¶ 97-100.) Accordingly, Plaintiff contends he did not understand the document he signed. (Id. ¶ 100.)

Upon Plaintiff's return to work in September 2022, Plaintiff was again faced with derogatory comments by Defendant Ramirez and again reported the behavior to Defendant Camilleri. (Id. ¶¶ 103, 105-6.) Defendant Camilleri, however, stated that he could not help Plaintiff because "Ramirez has a lot of power around here." (Id. ¶ 106.)

On or about December 14, 2022, Plaintiff and Defendant Ramirez were working the same shift. (Id. ¶ 113.) Plaintiff was waiting for the elevator while holding an industrial-sized garbage bin when Defendant Ramirez tried to walk behind Plaintiff to the staircase. (Id. ¶ 114.) Simultaneously, a man exited the elevator with a bicycle, forcing Plaintiff to step back and make contact with Defendant Ramirez. Defendant Ramirez "forcefully push[ed]" Plaintiff forward, causing Plaintiff neck pain. (Id. ¶¶ 114-117.) Despite security footage "unequivocally" illustrating that Defendant "Ramirez instigated the . . . altercation and forcefully pushed" Plaintiff, and Plaintiff's repeated complaints regarding discrimination, Defendants Sirotkin and Camilleri refused to view the footage or acknowledge evidence contradicting what they heard

from Defendant Ramirez.  (Id. ¶¶ 117, 125.)  Defendant Ramirez was never reprimanded or removed by supervisors.  (Id. ¶ 119.)

After this incident, Defendant Sirotkin drafted an Employee Discipline Notice dated December 19, 2022, which served as Plaintiff's formal termination notice.  (Def. Memo. at 10.)  It listed the type of offense as tardiness, rudeness, and "other." (Def. Declaration, dated Sept. 17. 2024 [dkt. no. 40-1].)  The Notice was signed by Defendant Sirotkin and included an excerpt from Defendant Camilleri's email regarding the incident.  (Def. Memo. at 10.)  Defendants Sirotkin and Camilleri terminated Plaintiff without investigating the incident or viewing the footage.  (Am. Compl. ¶¶ 120, 125.)  Plaintiff asserts that these allegations were merely pretextual and that the true motivation for his termination was his national origin and retaliation for reporting discriminatory conduct.  (Id. ¶¶ 123-24, 127.)

## B. Procedural Background

On September 3, 2024, Plaintiff filed the operative Amended Complaint.  (See Am. Compl.)  In the Amended Complaint, Plaintiff asserts ten causes of action:  discrimination and retaliation under the New York City Human Rights Law ("NYCHRL") against the Corporate Defendants (Counts One and Two);  interference with protected rights under the NYCHRL against the Individual Defendants (Count Three);  aiding and abetting NYCHRL violations against the Individual Defendants (Count Four); vicarious employer liability

under the NYCHRL against the Corporate Defendants (Count Five); discrimination under the New York State Human Rights Law ("NYSHRL") against the Corporate Defendants (Count Six); discrimination under the NYSHRL against the Individual Defendants (Count Seven); aiding and abetting NYSHRL violations against the Individual Defendants (Count Eight); and discrimination and retaliation under Title VII against the Corporate Defendants (Counts Nine and Ten). (Am. Compl. ¶¶ 137–68.)

On September 17, 2024, Defendants moved to dismiss nine of the ten claims asserted in the Amended Complaint. (See Def. Memo.) On October 8, 2024, Plaintiff filed his opposition to the motion. (See Pl. Opp.)  In a reply brief filed on October 22, 2024, Defendants clarified the scope of their motion, seeking dismissal only of Plaintiff's Second, Third (in part), Fourth, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action. (See Def. Reply.)

## II.  Legal Standards

### A. Pleading Standard Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a reasonable inference

9

that a defendant is liable. Id. This standard is not a probability requirement. Id. Rather, it asks for more than a "sheer possibility" that a defendant acted unlawfully. Id.

At the motion to dismiss stage, the Court must accept as true all factual allegations and draw from them all reasonable inferences in a plaintiff's favor. Koch, 699 F.3d at 145. The Court is not required, however, "to credit a complaint's conclusory statements without reference to its factual context." Iqbal, 556 U.S. at 686. Pleadings that offer only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

For employment discrimination suits at the pleading stage, a plaintiff is not required to prove discrimination or even allege specific facts establishing every element of the McDonnell Douglas prima facie case. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). There is no heightened pleading standard for employment discrimination suits. Swierkiewicz, 534 U.S. at 515. To survive a motion to dismiss, allegations must simply provide "plausible support to the reduced requirements" of the prima facie case. Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).

## B. NYSHRL Pleading Standard

As discussed above, Plaintiff brings claims under §§ 296(1)(a), (6), and (7) of the NYSHRL. (Am. Compl. ¶¶ 152-60.)

10

The NYSHRL has historically been treated as analogous to both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL").  See Qorrolli v. Metro. Dental Assocs., 124 F.4th 115, 122-23 (2d Cir. 2024).  In 2019, however, the NYSHRL was amended to provide for a reduced pleading standard.  See id. Following those amendments, the NYSHRL, like the NYCHRL, must "be construed liberally" and exceptions should be "construed narrowly in order to maximize deterrence of discriminatory conduct."  N.Y. Exec. Law § 300; Qorrolli, 124 F.4th at 123.  Courts must therefore construe the NYSHRL "in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Syeed v. Bloomberg L.P., 41 N.Y.3d 446, 451 (2024); Moore v. Hadestown Broadway Limited Liability Co., 722 F. Supp. 3d 229, 245 (S.D.N.Y. 2024) (courts must scrutinize discrimination claims brought pursuant to the NYSHRL under a "lenient pleading standard").

> i.   NYSHRL: Discrimination and Hostile Work Environment

The NYSHRL makes it an unlawful discriminatory practice "[f]or an employer . . . to discharge from employment . . . or to discriminate against . . . [an employee] in compensation or in terms, conditions or privileges of employment" because of an individual's race or national origin.  N.Y. Exec. Law § 296(1)(a). Under the lenient standard, Plaintiff must only allege sufficient facts to show he was treated "less well" due to "membership in a

protected class." Moore, 722 F. Supp. 3d at 245 (citation omitted). Hostile work environment claims under the NYSHRL are "subsumed within" discrimination claims. See id. at 245-46.

### ii. NYSHRL: Retaliation

The NYSHRL also provides for direct liability under a theory of retaliation, making it an "unlawful discriminatory practice for any person . . . to retaliate or discriminate against any person because such person has (i) opposed any practices forbidden under this article, [or] (ii) filed a complaint, testified, or assisted in any proceeding under this article." N.Y. Exec. Law. § 296(7). For a NYSHRL retaliation claim to survive a motion to dismiss, the plaintiff must allege that: (1) defendants discriminated—or took an adverse employment action—against the plaintiff, (2) because he or she has opposed any unlawful employment practice. McHenry v. Fox News Network, LLC, 510 F.Supp. 3d 51, 67 (S.D.N.Y. 2020).

For NYSHRL retaliation claims, a plaintiff engages in protected activity, including a complaint, so long as the employee has a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Medina v. AAM 15 Mgmt. LLC, 750 F. Supp. 3d 332, 350 (S.D.N.Y 2024).

As to the "adverse action" element, Plaintiff must then allege that in response to his protected activity the defendant "engaged in conduct that was reasonably likely to deter a person from

12

engaging in such action." Dobney v. The Walt Disney Co., 2024 WL 325336, at *5 (S.D.N.Y. Jan. 29, 2024) (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013)). A causal nexus between the protected activity and the adverse action can be pled either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff." Littlejohn, 795 F.3d at 319.

### iii. NYSHRL: Aiding and Abetting

In addition, the NYSHRL prohibits any individual from "aid[ing], abet[ing], incit[ing], compel[ing], or coerc[ing]" any direct act of discrimination or retaliation under the statute. N.Y. Exec. Law § 296(6).  Any individual can be held liable for aiding and abetting as long as he or she "actually participate[d]" in the unlawful conduct and "share[d] the intent or purpose of the principal actor."  McHenry, 510 F.Supp. 3d at 68.

### C. NYCHRL Pleading Standard

As discussed above, Plaintiff brings claims under §§ 8-107(1)(a) and (e), 8-107(6), (13), and (19) of the NYSHRL. (Am. Compl. ¶¶ 137-51.)  Courts must analyze NYCHRL claims separately and independently from any federal or state law claims, construing the NYCHRL's provisions "broadly in favor of discrimination plaintiffs, to the extent that such a construction

13

is reasonably possible." Mihalik, 715 F.3d at 109. Like the NYSHRL, to survive a motion to dismiss under the NYCHRL, a plaintiff must only plead that he or she was treated less well because of his or her membership in a protected class. Moore, 722 F. Supp. at 245.

i.    NYCHRL: Retaliation

The NYCHRL makes it an unlawful discriminatory practice "[f]or any person . . . to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, [or] (ii) filed a complaint." N.Y. City Admin. Code § 8-107(7). Liability for retaliation under the NYCHRL is broader than its federal and state counterparts "in that there is no requirement that the employee suffer a materially adverse action." Moccio v. Cornell Univ., 889 F. Supp. 2d 539, 592 (S.D.N.Y. 2012).

To state a retaliation claim under the NYCHRL, Plaintiff must show that he took an action opposing the employer's discrimination and that, as a result, the employer engaged in conduct that was "reasonably likely to deter a person from engaging in such action." Kraiem v. JonesTrading Institutional Servs. LLC, 571 F. Supp. 3d 53, 60 (S.D.N.Y. 2021).

14

ii.    NYCHRL:  Aiding and Abetting

Plaintiff also brings aiding and abetting claims under the NYCHRL.  The same standards used to evaluate aiding and abetting claims under the NYSHRL apply to the NYCHRL.  See Beniquez v. N.Y. State Unified Ct. Sys., 2025 WL 861299, *5 (S.D.N.Y. Mar. 18, 2025).

iii.  NYCHRL: Interference

The NYCHRL makes it an unlawful discriminatory practice for a person to "coerce, intimidate, threaten or interfere with . . . any person in the exercise or enjoyment of . . . any right granted or protected pursuant to this section."  N.Y. City Admin. Code § 8-107(19).   Threats—defined by the Court of Appeals as "the creation of an impression of impending injury"—are required to state a claim under the NYCHRL.  Leizerovici v. HASC Ctr., Inc., 2018 WL 1115348, at *12 (E.D.N.Y. Feb. 27, 2018); U.S. v. Davila, 461 F.3d 298, 302 (2d. Cir. 2006).

**D. Title VII Pleading Standard**

i.   Title VII: Discrimination and Hostile Work Environment

To assert a claim of employment discrimination under Title VII, a plaintiff must allege that the employer discriminated against the plaintiff because of his or her membership in a protected class.  Moore, 722 F. Supp. 3d at 244.  At the pleading stage, the Court does not require a plaintiff to establish a prima facie case of discrimination.  Id. at 245.  Rather, the complaint

15

need only set forth facts sufficient to show that a plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent.  Id.

 ii.  Title VII: Retaliation

    Title VII of the Civil Rights Act of 1964 provides that it is an unlawful discriminatory practice for an employer to "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. 2000e-3(a).  Retaliation claims under Title VII are analyzed under the same burden shifting framework as claims under NYSHRL.  Williams v. Breaking Ground Hous. Dev. Fund Corp., 2026 WL 394362, *7 (S.D.N.Y. Feb. 12, 2026).

    Unlike the NYSHRL however, under Title VII, a plaintiff must allege that the retaliation was a but-for cause of the adverse action and not simply a substantial or motivating factor in the employer's decision.  Toombs v. New York City Hous. Auth., 830 F. App'x 665, 668 (2d Cir. 2020).  But-for causation can similarly be alleged through either direct evidence of retaliatory animus or indirect evidence.  Littlejohn, 795 F.3d at 319.

16

**E. Vicarious Liability & Cat's Paw Theory**

    i.    <u>Vicarious Liability</u>

Plaintiff's allegations implicate three levels of corporate actors: the subordinate porter employees (Plaintiff, Defendant Ramirez, and Defendant Sandoval), their supervisors (Defendants Osorio, Camilleri, and Sirotkin), and the corporations themselves (Corporate Defendants 77 Bleecker and Century Management). The bulk of the counts at issue here—Counts Two, Six, Nine, and Ten—seek to hold the Corporate Defendants vicariously liable under Title VII, the NYSHRL, and the NYCHRL.

A corporation, being an artificial entity, can of course only act through its employees and agents. <u>See</u> <u>Suez Equity Investors, L.P. v. Toronto-Dominion Bank</u>, 250 F.3d 87, 101 (2d Cir. 2001). Accordingly, employers are vicariously liable for torts committed by an employee acting within the scope of his or her employment. <u>Galper v. JP Morgan Chase Bank, N.A.</u>, 802 F.3d 437, 441 (2d Cir. 2015). "In the Title VII context, it is well-settled that employers may be held vicariously liable for the conduct of their agents. In such cases, the plaintiff generally must establish (1) that the employer's agent (a) was motivated by the requisite discriminatory intent, and (b) effected the relevant adverse employment action; and (2) that the agent's conduct is imputable to the employer under general agency principles." <u>Menaker v. Hofstra Univ.</u>, 935 F.3d 20, 37 (2d Cir. 2019).

17

Employers may likewise be held vicariously liable under the NYSHRL for discriminatory acts of employees, albeit under an apparently stricter standard. Doe v. Bloomberg, L.P., 36 N.Y.3d 450, 455 (2021) (employers are only vicarious liable for an employee's discriminatory act where "the employer became a party to it by encouraging, condoning, or approving it"); M.H. v. Starbucks Coffee Co., 2023 WL 5211023, at *3 (S.D.N.Y. Aug. 13, 2023) (noting apparent differences in vicarious liability under Title VII and the NYSHRL).

The NYCHRL imposes strict liability on employers for discriminatory acts of managerial employees that violate subdivision (1) and (2) of Section 107. Garrigan v. Ruby Tuesday, Inc., 2014 WL 2134613, *6 (S.D.N.Y. May 22, 2014); see N.Y.C. Admin. Code Title 8-107(13)(b). The NYCHRL also imposes strict liability on employers for the acts of any employee—regardless of position—for violations of all other subdivisions, including retaliation claims under subdivision 7. Id. § 8-107(13)(a).

ii. Cat's Paw Theory

Ultimately, Plaintiff pursues the same "Cat's Paw" theory of vicarious liability on both his federal and state claims against the Corporate Defendants. "At its core, a 'cat's paw' case simply reflects a slight variation on the standard principles of vicarious liability." Menaker, 935 F.3d at 37; Vasquez v. Empress Ambulance Serv., 835 F.3d 267, 273 (2d. Cir. 2016). Under a Cat's Paw theory

18

of liability, an employer may be held liable when an employee is subjected to an adverse employment action by a supervisor who—while not necessarily motivated by discriminatory animus—is manipulated by a subordinate who does possess such a motive. Vasquez, 835 F.3d at 272.  Because the supervisor, acting as agent of the employer, has permitted himself to be used "as the conduit of [the subordinate's] prejudice," that prejudice may then be imputed to the employer and used to hold the employer liable for employment discrimination.  Id.

Under a Cat's Paw theory, however, an employer is only liable if its own negligence gives effect to the employee's retaliatory animus.  See id. at 275.  An employer acts negligently when the employer knew or should have known of the discriminatory conduct and failed to take remedial action.  See id. at 276; Menaker, 935 F.3d at 39 ("These principles provide for liability where the employer was negligent because it acted at the agent's behest when it knew or should have known of the agent's discriminatory motivation.").  Accordingly, an employer may be vicariously liable if the employer allows a subordinate's discriminatory animus to cause an adverse employment action, provided the employer knew or should have known of the discriminatory intent.  Vasquez, 835 F.3d at 272.  To that end, an employer cannot deliberately ignore conflicting evidence or refuse to conduct a reasonable

investigation and subsequently claim a mere error in judgment to escape liability.  See id. at 276.

The Cat's Paw theory has been applied for both discrimination and retaliation claims under Title VII and the NYSHRL.  See id. at 269 (applying Cat's Paw liability to a retaliation claim under Title VII and the NYSHRL); Edelman v. NYU Langone Health Sys., 708 F. Supp. 3d 409, 435 (S.D.N.Y. 2023), rev'd on other grounds 141 F.4th 28 (2d Cir. 2025) ("The Second Circuit has also applied the cat's paw doctrine to retaliation claims under the NYSHRL."); Velázquez-Pérez v. Developers Diversified Realty Corp., 753 F.3d 265 (1st Cir. 2015) (applying Cat's Paw liability to a discrimination claim under Title VII).[3]

### III. Discussion

### A. Discrimination and Hostile Work Environment (Counts Six and Nine)

Defendants move to dismiss Counts Six and Nine of the Amended Complaint, asserting that Plaintiff has failed to state a claim for discrimination against the Corporate Defendants under both the

---

[3] Although the Court of Appeals has not explicitly endorsed the Cat's Paw theory beyond Title VII and NYSHRL retaliation claims, the Vasquez court relied heavily on the First Circuit's decision in Velázquez-Pérez, which in turn applied the theory to Title VII discrimination claims.  753 F.3d at 273.  In light of the reasoning behind Vasquez, and because NYSHRL claims must be construed liberally in a plaintiff's favor where such a construction is possible, Moore, 722 F. Supp. 3d at 245, the Court finds no reason to preclude the application of Cat's Paw liability to discrimination claims under either Title VII or the NYSHRL. In any event, Defendants do not appear to contest that the theory applies with equal force to all of Plaintiff's claims against the Corporate Defendants, and the Court will proceed on that assumption.

20

NYSHRL and Title VII.  (Def. Memo. at 14.)  Specifically, Defendants contend that Plaintiff fails to allege facts sufficient to support a plausible inference that the adverse employment actions were motivated by discriminatory intent.

As discussed above, Plaintiff rests his theory of discrimination against the Corporate Defendants on Cat's Paw liability.  Therefore, in order to survive a motion to dismiss, Plaintiff must allege sufficient facts that a subordinate employee's discriminatory intent was achieved due to the negligence or recklessness of supervisors.  The Court finds that Plaintiff has done so.  Defendant's Motion to Dismiss as to Counts Six and Nine is therefore DENIED.

i.   Subordinate Liability

The Court first addresses whether Plaintiff has properly alleged discrimination by a subordinate employee.  To establish a claim of discrimination under Title VII, a plaintiff must allege either direct evidence of intent to discriminate or indirect evidence showing circumstances giving rise to an inference of discrimination.  Choudhury v. Northwell Health, Inc., 2025 WL 2300220, *4 (E.D.N.Y. Aug. 8, 2025).  Following the 2019 amendment of the NYSHRL, courts have analyzed NYSHRL discrimination claims under a more lenient standard, requiring only a showing that a plaintiff was treated "less well, at least in part for a discriminatory reason."  Id. at *5.

21

Defendants concede that Plaintiff was within a protected class and was qualified for the position of porter.  (Def. Memo. at 14.)  While the parties devote considerable discussion to whether Plaintiff suffered materially adverse changes in his employment, they ultimately agree—and the law confirms—that both Plaintiff's suspension and termination constitute materially adverse employment actions.  (Def. Memo at 14-15; Pl. Opp. at 4-6); Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (noting that "materially adverse changes include termination of employment, a demotion . . . decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.").  Defendants argue that the Amended Complaint fails to allege any non-conclusory facts from which an inference could reasonably be drawn that the adverse employment actions were motivated by discriminatory animus.  (See Def. Memo. at 15.)

Plaintiff alleges sufficient facts to find that Defendant Ramirez discriminated against Plaintiff and acted with the intent to terminate Plaintiff.  Defendant Ramirez's own comments alone suffice to draw a reasonable inference that he acted with discriminatory intent, including:  "I don't like Albanians," "Fuck you," (Am. Compl. ¶ 41), calling him "the fucking Albanian," (Id. ¶ 53), and saying "Fuck you, you fucking Albanian!  I will terminate you.  I will have you fired.  George [Osorio] is my

friend, and I will make it happen." (Id. ¶ 60.) Coupled with the alleged physical hostility—dropping a compactor on Plaintiff's head and leaving Plaintiff with the most strenuous tasks, (Id. ¶¶ 42, 50)—Plaintiff has adequately plead discrimination by Defendant Ramirez.

### ii. Corporate Defendants

Having established discriminatory intent and animus as to Defendant Ramirez on the subordinate level, the next issue is whether those claims can also support vicarious liability on the part of the Corporate Defendants. To plead discrimination against a corporate defendant, a plaintiff may allege facts that: (1) demonstrate direct discriminatory intent by a corporate defendant; (2) raise an inference of discrimination by presenting evidence of disparate treatment regarding similarly situated employees; or (3) establish a Cat's Paw theory of liability. See Cooper v. Templeton, 629 F. Supp. 3d 223, 230-231 (S.D.N.Y. 2022); Vasquez, 835 F.3d at 272.

Plaintiff does not allege any discriminatory comments made by Defendants Osorio, Camilleri, or Sirotkin that evidence discriminatory animus towards Plaintiff. Nor does Plaintiff allege any facts that those three defendants treated Plaintiff differently than other porters. Instead, Plaintiff relies exclusively upon a Cat's Paw theory. (Pl. Opp. at 6-9.)

23

The Court concludes that, under a Cat's Paw theory, Plaintiff has properly pled facts that plausibly give rise to discrimination under both Title VII and the NYSHRL.   The relevant allegations demonstrate that the Corporate Defendants knew or should have known that Defendant Ramirez held discriminatory animus toward Plaintiff and was acting with that intent.

As an initial matter, Plaintiff clearly alleges that Defendants Ramirez and Osorio maintained a close relationship extending beyond the workplace.  (Am. Compl. ¶ 24.)   Plaintiff likewise alleges that he repeatedly complained to Defendants Camilleri and Sirotkin about Defendant Ramirez's discriminatory treatment, including filing formal workplace discrimination complaints.   (Id. ¶¶ 55, 61, 67, 106.)   Defendant Camilleri allegedly acknowledged these complaints and represented that they would be reported up the chain of command, which necessarily included Defendants Sirotkin and Osorio. (Id. ¶ 62.)

Plaintiff also adequately alleges that his supervisors negligently and recklessly gave effect to Defendant Ramirez's discriminatory intent.   Plaintiff alleges that both Defendants Camilleri and Sirotkin consistently credited Ramirez's account over his own.   On the day police were called regarding Plaintiff's alleged intoxication, Defendants Camilleri and Sirotkin identified Defendant Ramirez—who was not even on shift—as the reporting party on the disciplinary form.   (Id. ¶¶ 87-88.)   When Plaintiff sought

24

assistance with his discrimination complaints, both individuals refused, stating that Defendant Ramirez "has a lot of power around here."  (Id. ¶ 106.)  Finally, when presented with dispositive evidence that Plaintiff was not intoxicated, Defendants declined to credit it or conduct further investigation. (Id. ¶ 78.)

On these alleged facts, Plaintiff has plausibly alleged that the Corporate Defendants were negligent in relying on a biased source to suspend Plaintiff, despite notice of the source's potential animus towards Plaintiff.[4]  Vasquez, 835 F.3d at 273.

Regarding the December 2022 termination, the facts alleged by Plaintiff also suggest a recurring pattern in which the Corporate Defendants reflexively credited Defendant Ramirez's accounts while refusing to investigate Plaintiff's explanations or review available video footage.  As alleged in the pleadings, the altercation with Defendant Ramirez played a substantial role in the termination decision—representing yet another instance of Defendant Ramirez's exercise of Cat Paw-like influence over the Corporate Defendants.  Accordingly, the Motion to Dismiss as to Counts Six and Nine is DENIED.

---

[4] Defendants argue that the Cat's Paw theory fails because, "per Plaintiff's own allegations," Defendant Sandoval, rather than Defendant Ramirez reported Plaintiff's intoxication and there are no facts alleged that Defendant Sandoval had a discriminatory motive.  (Def. Memo. at 19.)  The Court finds this argument unpersuasive given Plaintiff's allegations that Defendants Sandoval and Ramirez acted in concert and that Defendants Osorio, Camilleri, and Sirotkin relied exclusively on Defendant Ramirez's input. (Am. Compl. ¶¶ 68, 78.)

**B. Aiding and Abetting (Counts Four and Eight)**

Defendants move to dismiss Counts Four and Eight, which allege aiding and abetting liability against the Individual Defendants under the NYCHRL and NYSHRL.  The same standard governs claims under both the NYSHRL and NYCHRL.  Beniquez, 2025 WL 861299 at *5.

Defendants correctly note that both statutes require that primary liability first be established against the employer or principal before accessorial liability can be found.  See Davis v. Power of Auth., 2022 WL 309200, at *20 (S.D.N.Y. Feb. 2, 2022).  Defendants argue that because Plaintiff's claims for discrimination against the Corporate Defendants fail, there is no predicate claim on which to hang the aiding and abetting claims, and therefore they fail.  (Def. Memo. at 23-34.)

However, the Court has already determined that Plaintiff properly alleged facts giving rise to plausible claims of discrimination by the Corporate Defendants.  Furthermore, Plaintiff's claim for vicarious employer liability under NYCHRL § 8-107(13)—which Defendants did not move to dismiss—provides an additional, independent predicate for accessorial liability.  See McHenry, 510 F. Supp. 3d at 73.

Defendants separately contend that the aiding and abetting claims must be dismissed as to the Individual Defendants because an individual cannot aid and abet his or her own conduct.  (Def. Memo. at 24.)  However, in this Circuit, a derivative claim for

26

aiding and abetting is permissible when a corporate employer is considered the principal actor—even if the corporate employer is itself only vicariously liable through the acts of its employees. See McHenry, 510 F. Supp. 3d at 73. Thus, "a co-worker who actually participates in the conduct giving rise to a discrimination claim" can be held liable "even though that co-worker lacked the authority to either hire or fire the plaintiff." Feingold v. N.Y., 366 F.3d 138, 158 (2d Cir. 2004).

To survive a motion to dismiss, Plaintiff must allege that the Individual Defendants "actually participated" in the conduct and "share[d] the intent or purpose of the principal actor." McHenry, 510 F. Supp. 3d at 68. A supervisor's "failure to take adequate remedial measures" in response to a complaint of discrimination can, with proper factual allegations, constitute actual participation. See id.; Lewis v. Triborough Bridge & Tunnel Auth., 77 F. Supp. 2d 376, 382-83 (S.D.N.Y. 1999) (aiding and abetting claims not dismissed where plaintiff alleged that, in failing to take adequate actions to correct discrimination, her supervisors had "encouraged, condoned or approved" of the offensive conduct (citing Hicks v. IBM, 44 F. Supp. 2d 593 (S.D.N.Y. 1999))).

Applying these standards, the Court finds that Plaintiff has sufficiently pled a claim for aiding and abetting against Defendant Ramirez. The Amended Complaint details frequent and targeted

derogatory comments made by Defendant Ramirez regarding Plaintiff's national origin, which clearly supports an inference of discriminatory intent. Accordingly, the motion is DENIED as to Defendant Ramirez.

Similarly, the motion is DENIED as to Defendants Osorio, Camilleri, and Sirotkin. Plaintiff alleges that these supervisors intentionally or recklessly disregarded repeated complaints, granting blind trust to Defendant Ramirez based on personal connections while egregiously refusing to credit Plaintiff's accounts. Such a failure to take remedial measures constitutes "actual participation" sufficient to sustain an aiding and abetting claim at the pleading stage.

However, the Court reaches a different conclusion regarding Defendant Sandoval. Plaintiff fails to allege any specific comments made by Defendant Sandoval regarding Plaintiff's nationality, and he does not plead facts from which the Court could infer that Defendant Sandoval harbored discriminatory animus. While Defendant Sandoval reported Plaintiff's alleged intoxication, the Complaint lacks additional context—such as incriminating statements by Defendant Sandoval, a history of disparate treatment, or further connections to Defendant Ramirez on the day of the incident—that would elevate this act to a plausible claim of participation in discrimination with shared

intent.  Therefore, the Motion to Dismiss the aiding and abetting claims as to Defendant Sandoval is GRANTED.

### C. NYSHRL Retaliation (Counts Two, Seven, and Ten)

#### i.  As Against Individual Defendants (Count Seven)

Defendants move to dismiss Count Seven alleging retaliation under the NYSHRL against the Individual Defendants for failure to state a claim.  Defendants contend that Plaintiff has failed to plead non-conclusory allegations sufficient to support an inference of causal connection between the protected activity and the Corporate Defendants' actions.

Plaintiff may establish a causal connection through either direct or indirect evidence.  Littlejohn, 795 F.3d at 319. Causation may be alleged directly through evidence of retaliatory animus directed against a plaintiff by the defendant. Sclafani v. PC Richard & Son, 668 F. Supp. 2d 423, 436 (E.D.N.Y. 2009).  In the absence of direct animus, a plaintiff may plead causation indirectly through circumstantial evidence, typically in one of two ways.  Id.  First, a plaintiff may allege that he or she was treated differently from similarly situated employees. Cruz v. Loc. 32BJ, 2024 WL 4357036, at *12 (S.D.N.Y. Sept. 30, 2024). Second, a plaintiff may allege that the protected activity was followed closely in time by the adverse employment action.  Id.

While the Court of Appeals has declined to draw a "bright line" defining the outer limits of temporal proximity, Gorman-

29

Bakos v. Cornell Co-op. Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001), courts within this District generally hold that a passage of more than two months between the protected activity and the adverse action is too attenuated to support an inference of causation.  Feliciano v. City of New York, 2015 WL 4393163, at *10 (S.D.N.Y. July 15, 2015) (collecting cases).

Defendants argue that the September suspension was based on allegations of intoxication and that Plaintiff fails to point to a specific complaint within the two months prior.  However, the Court finds Plaintiff's allegations sufficient at this stage for two reasons.  First, Plaintiff alleges that Defendant Ramirez—the source of the intoxication allegation—explicitly stated a desire to have Plaintiff terminated.  The timing of this allegation, occurring shortly after Defendant Ramirez regained supervisory control, supports an inference that the intoxication charge was a pretextual vehicle for retaliation.  Second, Plaintiff alleges he complained to Defendant Sirotkin regarding Defendant Ramirez's discriminatory behavior for months up until the September incident and again on September 6, 2022—just days before the suspension settlement was finalized.  (Am. Compl. ¶¶ 61, 85.)  This creates a high degree of temporal proximity (less than one week) between a specific protected act and the finalization of the adverse action.

Regarding the December termination, Plaintiff alleges he filed a formal complaint in mid-October 2022. The resulting termination in mid-December falls squarely within the two-month window often recognized by courts in this Circuit as sufficient to permit an inference of causation. See Kim v. Columbia Univ., 987 N.Y.S.2d 341, 343 (App. Div. 2014) (plaintiff's termination two months after the second complaint may establish the necessary causal nexus between the protected activity and plaintiff's discharge); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir. 2001) (finding that a one month lapse between complaint and termination was short enough to infer a causal connection).

Additionally, Defendants Camilleri and Sirotkin repeatedly brushed off the complaints and explicitly told Plaintiff there was "nothing" they could do because Defendant Ramirez had "a lot of power." (Am. Compl. ¶¶ 106, 108.) Defendants Camilleri, Sirotkin, and Osorio disregarded Plaintiff's complaints and repeatedly refused to credit his explanations and allegations regarding the discrimination he was facing. These derogatory comments and the overarching lack of concern served to deter Plaintiff from further complaints or escalating the matter. See Kim, 987 N.Y.S.2d at 343 (finding a causal nexus supported by the fact that the plaintiff was specifically told to refrain from complaining).

Defendants argue that Plaintiff was terminated for his tardiness which serves as a legitimate, independent basis for termination. (Def. Memo. at 22.) Plaintiff alleges that his purported tardiness was a first-time offense and ultimately a pretext for termination. (Pl. Opp at 9.) At the pleading stage, a plaintiff need not disprove a defendant's proffered non-retaliatory rationale. See Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000). The combination of the two-month temporal proximity and the alleged departure from standard disciplinary practices regarding first-time tardiness sufficiently pleads pretext. Accordingly, Defendant's Motion to Dismiss Count Seven as to Defendants Ramirez, Osorio, Camilleri, and Sirotkin is DENIED.

Once again, however, the Court reaches a different conclusion regarding Defendant Sandoval. Plaintiff has failed to plead sufficient facts to establish that Defendant Sandoval possessed a retaliatory motive. Plaintiff does not allege facts demonstrating that Defendant Sandoval acted with discriminatory intent or took adverse action because of Plaintiff's protected activity. Indeed, the Amended Complaint is unclear as to whether Defendant Sandoval was allegedly even aware of Plaintiff's complaints. Accordingly, Defendants' Motion to Dismiss Count Seven as to Defendant Sandoval is GRANTED.

32

ii.  Claims As Against Corporate Defendants (Counts Two and Ten)

Defendants move to dismiss the NYCHRL (Count Two) and Title VII (Count Ten) retaliation claims against the Corporate Defendants, contending that Plaintiff failed to allege facts sufficient to demonstrate that his protected complaints were the "but-for" cause of any adverse employment actions.  See Toombs, 830 F. App'x at 668 (holding that Title VII causation requires "but-for" causation rather than a mere "substantial motivating factor").  The NYCHRL pleading standard is "broader than Title VII."  See Mihalik, 715 F.3d at 112-13.  Under the NYCHRL, a plaintiff need only allege that the employer engaged in conduct "reasonably likely to deter a person from engaging in protected activity," rather than a formal adverse action.  Id.

As to Count Two, which purportedly seeks to hold Corporate Defendants liable for retaliation under the NYCHRL, Plaintiff does not outline his specific theory of liability and incorrectly cites the relevant statutory provision.  (Am. Compl. ¶¶ 140-42.)  Given the language quoted in the Amended Complaint, however, the Court construes this as a claim for retaliation under NYCHRL § 8-107(7).  (Id. ¶ 141.)  Furthermore, it is unclear from Plaintiff's opposition—which reserved a mere single sentence for discussion of retaliation claims under the NYCHRL—whether Plaintiff seeks to hold the Corporate Defendants liable for NYCHRL retaliation under

33

a theory of statutory strict liability, Cat's Paw liability, or both. (Pl. Opp. at 15.) Accordingly, the Court analyzes liability under both standards and ultimately finds that Plaintiff has pled sufficient facts to survive a motion to dismiss.

Regarding statutory strict liability, NYCHRL § 8-107(13)(b) creates strict liability for a manager or supervisor's acts when those acts violate subdivisions (1) or (2) of Section 107. Zakrzewska v. New School, 14 N.Y.3d 469, 481 (2010). But for all other employee violations of Section 107 —which would ostensibly encompass retaliation under subdivision 7—NYCHRL § 8-107(13)(a) imposes across-the-board strict liability without the additional requirements in subdivision 13(b). NYCHRL § 8-107(13)(a). Because it is unclear whether Plaintiff asserts employer liability under subdivision 13(a) or 13(b), the Court will apply the stricter standard under subdivision 13(b).

As noted, subdivision 13(b) imposes liability on an employer for the actions of an employee or agent in three circumstances: (1) where the offending employee exercised managerial or supervisory responsibility; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take immediate and appropriate corrective action; or (3) where the employer "should have known" of the unlawful conduct yet failed to exercise reasonable diligence to prevent it. LeRoy v. Delta Air Lines, Inc., 2022 WL 12144507,

34

*3 (2d Cir. 2022).  Plaintiff adequately pleads facts to satisfy subdivision 13(b)(1), as Defendants Osorio, Camilleri, and Sirotkin—all of whom are supervisors or managers—allegedly engaged in retaliatory acts.  Even if this were not the case, Plaintiff alleges facts demonstrating that the Corporate Defendants "should have known" of the conduct and failed to prevent it.  Consequently, Plaintiff's claims against the Corporate Defendants survive Defendants' Motion under the statutory strict liability created by NYCHRL § 8-107(13).[5]

Count Ten, meanwhile, is sustainable under a Cat's Paw theory, which applies to Title VII retaliation claims.  See Vasquez, 835 F.3d at 272-273.  Even if the ultimate decision-makers, such as Defendants Sirotkin or Camilleri, lacked personal animus, the Corporate Defendants may be held liable if they negligently relied on Defendant Ramirez's biased or retaliatory reports to effectuate Plaintiff's suspension and termination.  Id.  As noted, the Corporate Defendants took adverse action against Plaintiff shortly after his protected complaints, relying heavily on claims made by Defendant Ramirez, who allegedly harbored a clear prejudice against Plaintiff and expressed a desire to see his employment terminated.  These actions followed repeated refusal to protect Plaintiff or credit his complaints.  Viewing the facts in the light

---

[5] For the same reasons articulated in the Court's discussion of Count Ten, Plaintiff's NYCHRL retaliation claims against the Corporate Defendants could be independently sustained under a Cat's Paw theory.

most favorable to the non-moving party, as the Court must, Plaintiff has plausibly alleged that the Corporate Defendants negligently relied on Defendant Ramirez, thereby effectuating a retaliatory animus.  Accordingly, Defendants' Motion to Dismiss Counts Two and Ten is DENIED.

### D. Interference (Count Three)

Defendants move to dismiss Plaintiff's interference claim under the NYCHRL as to the Individual Defendants, arguing that Plaintiff failed to allege any actionable "threats" beyond those purportedly made by Defendant Ramirez.

Under the NYCHRL, an interference claim is sufficiently pled where a defendant's actions create an "impression of impending injury."  See Leizerovici, 2018 WL 1115348, at *12 (finding a claim for interference where a plaintiff was told "nearly daily" that he risked his job if he did not conform to certain standards).

Regarding Defendant Ramirez, Plaintiff alleges a persistent pattern of targeted behavior.  Specifically, Plaintiff alleges Defendant Ramirez stated it was his "mission" to have Plaintiff fired and expressed a desire to terminate "the fucking Albanian." (Am. Compl. ¶¶ 60, 102 n.2, 105.)  Defendant Ramirez's alleged statements constitute "threats" sufficient to state a claim for interference with Plaintiff's protected rights.  Therefore, the Motion to Dismiss Count Three as to Defendant Ramirez is DENIED.

As to the remaining Individual Defendants, Plaintiff opposes the motion by citing allegations that the Individual Defendants failed to investigate or discipline Defendant Ramirez. (Pl. Opp. at 16-17.) While such a failure to act may reflect a lapse in institutional oversight, it does not rise to the level of an actionable threat, intimidation, or coercion under the NYCHRL. N.Y. City Admin. Code § 8-107(19). These defendants did not threaten Plaintiff with the loss of employment, termination, or any other specific adverse consequence in retaliation for his complaints. At most, the allegations suggest negligence rather than the purposeful, coercive conduct required to sustain an interference claim. Accordingly, the Motion to Dismiss the NYCHRL interference claim is <u>GRANTED</u> as to all Individual Defendants with the exception of Defendant Ramirez.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is <u>GRANTED</u> in part and <u>DENIED</u> in part. For the sake of clarity, the Court will summarize the status of each count as to each Defendant:

- Count Three is dismissed as to Defendants Sandoval, Osorio, Camilleri, and Sirotkin;

- Count Four is dismissed as to Defendant Sandoval;

- Count Seven is dismissed as to Defendant Sandoval;

- Count Eight is dismissed as to Defendant Sandoval.

37

The claims that survive as to each Defendant are as follows:

- Count Two:  retaliation under the NYCHRL as to the Corporate Defendants;

- Count Three:  interference under the NYCHRL as to Defendant Ramirez;

- Count Four:  aiding and abetting in violation of the NYCHRL as to Defendants Ramirez, Osorio, Camilleri, and Sirotkin;

- Count Six:  race and national origin-based discrimination in violation of the NYSHRL as to the Corporate Defendants;

- Count Seven:  retaliation under the NYSHRL as against Defendant Ramirez, Osorio, Camilleri, and Sirotkin;

- Count Eight:  aiding and abetting under the NYSHRL as against Defendant Ramirez, Osorio, Camilleri, and Sirotkin;

- Count Nine:  race and national origin-based discrimination in violation of Title VII as to the Corporate Defendants;

- Count Ten:  retaliation under Title VII as to the Corporate Defendants.

38

The claims not at issue that survive in full are as follows:

- Count One:  race and national origin discrimination under the NYCHRL as to the Corporate Defendants;

- Count Five:  vicarious employer liability for discriminatory employee conduct under the NYCHRL as to the Corporate Defendants.

Counsel shall confer and inform the Court by letter no later than March 13, 2026, how they propose to proceed.

The Clerk of the Court shall close docket number 39.

**SO ORDERED.**

Dated:     March 4, 2026
           New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge